**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| THE PEOPLE OF GUAM<br><br>                                    Plaintiff,<br><br>        vs.<br><br>**EITHEN JAMES FRANKLIN AQUININGOC MENDIOLA**<br>**(aka Eithen James Mendiola)**<br>DOB: 09/11/1999<br><br>---<br><br>**FRANK JOSEPH GUMATAOTAO REYES JR.**<br>**(aka Frank Joseph Reyes)**<br>DOB: 03/14/2000<br><br>                                    Defendants. | CRIMINAL CASE NO. **CF0723-24**<br>GPD Case No.: 24-21062<br><br><br>**DECISION AND ORDER RE PEOPLE'S MOTION FOR RELIEF** |

**INTRODUCTION**

This matter came before the Honorable John C. Terlaje on February 24, 2025, for an Evidentiary Hearing on the People's Motion for Relief. Public Defender Attorney William Bischoff appeared for Defendant Eithen James Mendiola ("Defendant Mendiola"), Attorney

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page **1** of **9**

Terry Timblin appeared for Defendant Frank Joseph Reyes ("Defendant Reyes"), and Special Assistant Attorney General Curtis Van de veld appeared for the People of Guam ("People"). The Court now issues the following order **GRANTING** the People's Motion to Allow the Testimony of Former Medical Examiner Dr. Jeffery Nine, M.D., via Audio-Video Telecommunication.

## BACKGROUND

Defendant Mendiola has been charged in the Indictment with Murder (As a 1st Degree Felony) and Aggravated Assault (As a Second-Degree Felony) with a Special Allegation of Possession and Use of a Deadly Weapon in the Commission of a Felony. Defendant Reyes has been charged in the Indictment with Arson (As a Third-Degree Felony), Desecration (As a Misdemeanor), Obstructing Government Function (As a Misdemeanor), and Destruction of Evidence (As a Misdemeanor). Dr. Jeffrey Nine ("Dr. Nine") is the Former Medical Examiner of Guam, who performed an autopsy on the deceased alleged victim of the crimes charged in the Indictment in this matter, as well as several other matters currently pending at the Superior Court of Guam. Dr. Nine has since relocated to Columbus, Ohio, and the People have stated that testimony from Dr. Nine is required to present essential proof of the charges in the indictment.

On January 24, 2025, the People filed a Motion for Relief, requesting that Dr. Nine be allowed to Testify either via Audio-Video Telecommunication or by Deposition in Ohio. According to the People's Motion, Dr. Nine is unable to travel to Guam to testify because he is a caretaker for his wife and child, who have serious health issues. On February 7, 2025, Counsel for Defendant Mendiola filed an Opposition to the People's Motion for Relief, citing unwillingness to waive any aspects of his Sixth Amendment confrontation right.

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page **2** of **9**

# RULINGS

## I. Preliminary Law

The Sixth Amendment of the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Generally, "confrontation" has been read as "face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 7 U.S. 1012, 1016 (1988) (citing *Kentucky v. Stincer*, 482 U.S. 730, 748 (1987)). The last time this issue was addressed by the U.S. Supreme Court was in 1990, in *Maryland v. Craig*. According to the Supreme Court, "though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." 497 U.S. 836, 845 (1990). The Court goes on to say that this "does not, of course, mean that it may easily be dispensed with." *Id.* If applied literally, the Sixth Amendment would exclude any statement made by a declarant not present at trial. However, doing so would nullify virtually every hearsay exception, so Courts have long rejected this blanket view of the Confrontation Clause as "too extreme". *See Ohio v. Roberts*, 448 U.S. 56, 63 (1980). In *Maryland v. Craig*, the Supreme Court admitted testimony via a one-way closed circuit television procedure. 497 U.S. 836 at 852. In making their ruling, the Supreme Court recognized that "a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page 3 of 9

## II. Evidentiary Hearing requirement has been met

In *United States v. Yates*, the Eleventh Circuit Court of Appeal followed the Supreme Court's example in *Maryland v. Craig* and put forth the following test for when face to face confrontation may be dispensable: "The court generally must: (1) hold an evidentiary hearing and find (a) that the denial of physical, face-to-face confrontation at trial is necessary to further an important public policy and (b) that the reliability of the testimony is otherwise assured." *United States v. Yates*, 438 F.3d 1307, 1315 (2006). To allow for any testimony that is not done face-to-face, the trial court must find that it is "essential to deny the defendant his right to face-to-face physical confrontation in order to serve the interest the government asserts." *Id.*

Since *Maryland v. Craig* and *United States v. Yates*, other courts have applied this two-part analysis to two-way, remote video testimony such as the one requested here. *See United States v. Carter*, 907 F.3d 1199, 1206 (9th Cir. 2018) ["We now make clear that a defendant's right to physically confront an adverse witness (whether child or adult) cannot be compromised by permitting the witness to testify by video (whether one-way or two-way) unless *Craig*'s standard is satisfied."]. This two-part test is applied on a case-by-case basis. *See People v. Coulthard*, 90 Cal. App. 5th 743, 774, 307 Cal. Rptr. 3d 383, 411 (2023). The Court held the required evidentiary hearing on February 24, 2025, and gave each party an opportunity to state its case for why the testimony should or should not be allowed according to the analysis in *Yates*. The Court also emphasized in the order for the Evidentiary Hearing that the People are responsible for proving 1) whether the procedure of taking Dr. Jeffrey Nine's testimony remotely is necessary to further an important state interest, and if so, (2) whether testimony obtained through a live, two-way, audio-video telecommunication is otherwise assured reliable. *Id.*

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page **4** of **9**

III. **The People have shown that taking Dr. Jeffrey Nine's testimony remotely is necessary to further an important state interest**

Regarding the necessity prong of the *Craig* analysis, the People have met their burden as the Court agrees that taking Dr. Nine's testimony remotely is necessary to further important state interests. Though not required to follow California precedent, this Court finds the Decision of the California Court of Appeal for the Sixth District in *People v. Coulthard* to be particularly informative, particularly because it is so recent. In this case, the court considered the Covid-19 Pandemic as a public policy factor, but noted in its analysis and decision that the prosecutor "also asserted, among other things, that [the witness] was the primary caretaker of two of her children (both of whom were too young to be vaccinated against COVID-19) and did not have the means to arrange for alternate childcare." *Id.* In this case, the health and well-being of the witness' children, as well as the lack of caretaker for them, was a factor in the court determining that the witness could testify remotely from England. The court also noted that "[the witness'] testimony could not be supplanted with testimony from some other person." *Id.*

Similar to the witness in *Coulthard*, Dr. Nine is the only possible witness regarding the autopsy. His testimony is critical to the People's case because he personally performed the autopsy on Victim, and as he testified at the Evidentiary Hearing, no one else was present for the autopsy and it was not videotaped. Therefore, considering the rules of hearsay, Dr. Nine is the only possible witness regarding the autopsy.

Also similar to the witness in *Coulthard*, Dr. Nine's reasons for resisting testifying in Guam relate to the health of his family and concerns for them not having a caretaker. Dr. Nine gave sworn statements about how his wife and son are both undergoing significant medical

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page **5** of **9**

treatments multiple times per week in Ohio. *See* Declaration of Dr. Jeffrey Nine (Jan. 27, 2025). According to Dr. Nine, his wife and son both require his physical presence and continual assistance in their medical battles. *Id.* This physical presence and assistance would be halted for at least several days if Dr. Nine were forced to physically testify in Guam. Dr. Nine testified during the Evidentiary Hearing that he and his wife do not have family that are physically able to care for his wife or child, and the amount of care required would preclude any friends in the area from being able to help. Guam is over 7,500 miles from Ohio, resulting in significant travel time between the two locations. Because his presence is indefinitely needed in Ohio, Dr. Nine cannot physically testify in Guam without endangering the health of several family members. The Court believes that ensuring the safety of Dr. Nine's wife and child qualifies as an important public policy, particularly given the large distance between Guam and Ohio and the unique circumstances requiring his physical presence.

The Court also recognizes the many challenges that would arise for both parties if the Court were to deny this request. The only proposed alternative from the People or Defendant would involve flying the Defendant, his counsel, and any other necessary parties to Ohio to attend a deposition of Dr. Nine there. This would erase the opportunity for the jury to scrutinize the witness during his testimony, and would arguably provide a less fair trial for the Defendant. Allowing Dr. Nine to testify remotely would also avoid the significant time and financial costs of a deposition in Ohio. Furthermore, any evidence or hearsay objections that may arise during a deposition would not be reviewable by the Court in the moment they are made in the circumstance of a deposition. Live, remote testimony would allow for the Court to rule instantly on any objections, just as it would if the witness were in person.

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page **6** of **9**

Furthermore, 8 G.C.A. § 80.50 states that "the welfare of the people of the territory of Guam requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time," and makes it the duty of courts, judicial officers, and prosecuting attorneys to "expedite such proceedings to the greatest degree that is consistent with the ends of justice." The Court believes that two-way, remote video testimony will allow for the Defendant's trial to take place at the earliest possible time, without the significant delays that would be associated with a deposition taking place in Ohio. Furthermore, the Court believes two-way, remote video testimony is the best way for the Court to expedite proceedings, and believes that such a format can and will be consistent with the ends of justice. This point is further argued below in the discussion on reliability of testimony. Therefore, it is the Court's opinion that this testimony must necessarily be taken remotely to further important state interests as enumerated above.

IV. **The People have shown that testimony obtained through a live, two-way, audio-video telecommunication is otherwise assured reliable**

The Court also believes that the People have met their burden of ensuring that testimony received via live, two-way, audio-video telecommunication is reliable. This procedure preserves most, if not all elements critical to the confrontation clause, which have a combined effect of ensuring reliability of the evidence. For example, any such telecommunication testimony will be taken under an oath of truth, and Dr. Nine has expressed his understanding and willingness to take this oath. *See* Declaration of Dr. Nine (Jan. 27, 2025). Any telecommunication testimony will also be subject to contemporaneous cross-examination, and the Defendants will be given just as much freedom to cross-examine Dr. Nine as if he were to testify physically in Guam. Furthermore, the judge, jury, and the Defendants will all be able to view the demeanor and body

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page 7 of 9

language of Dr. Nine as he testifies on a screen in the courtroom. Although Dr. Nine won't be physically present, jurors will retain the ability to look Dr. Jeffrey Nine in his eyes as he testifies, judge his demeanor on the stand and the manner in which he testifies, and ultimately determine whether his testimony is worthy of belief.

Since the start of the Covid-19 pandemic, Courts around the nation have become more favorable to the idea of remote court attendance. This Court sees parties and counsel attend hearings via audio-video telecommunication on a day-to-day basis, and is well equipped to facilitate this form of testimony. Therefore, the Court believes that the People have shown that testimony obtained through a live, two-way audio-video telecommunication has been otherwise assured to be a reliable form of testimony in this case, and constitutes the best scenario for meeting the needs and rights of all parties.

## V. People's Motion to Continue Trial to Secure the Testimony of Former Medical Examiner Dr. Jeffrey Nine, MD by Deposition is denied

As a result of granting the above motion, the Court **DENIES** the alternative Motion, noting that this method is not preferred by the Court, People, or either Defendant.

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page **8** of **9**

## CONCLUSION

The Court recognizes the delicate nature of this case in balancing the Defendant's constitutional rights with the necessity of remote testimony given the circumstances in this case. However, for the reasons listed above, the Court **GRANTS** the People's Motion. Dr. Nine is permitted to testify remotely via live, two-way, audio-video telecommunication because this remote testimony is necessary to further important state interests, and this method of testifying is otherwise assured reliable.

SO ORDERED, this _____25_____ day of _____February_____ 2025.

_____
HONORABLE JOHN C. TERLAJE
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
Copy of the original was e mailed to
_____AG , PDSC,_____
_____Timblin_____
Date. 2/25/25 Time. 2:12pm
Albert Calvo Cruz
Deputy clerk . Superior Court of Guam

Decision and
Order Re People's Motion for Relief
CF0723-24, *People of Guam v. Eithen James Mendiola and Frank Joseph Reyes*
Page **9** of 9